STATE of Minnesota, Respondent,

v.

Bryan L. RUSSELL, Appellant.

No. 81–664.

Supreme Court of Minnesota.

March 4, 1983.

Leonard A. Wilson, Jr., Cloquet, for appellant.

Hubert H. Humphrey, III, Atty. Gen., Norman B. Coleman, Jr. and Janet Newberg Anderson, Asst. Attys. Gen., St. Paul, Donald J. Diesen, County Atty., Carlton, Richard C. Hansen, Sp. Prosecutor, Duluth, for respondent.

C. Paul Jones, State Public Defender, Kathy King, Asst. Public Defender, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Thomas L. Johnson, County Atty., Lee W. Barry, Asst. County Atty., Minneapolis, for respondent.

OTIS, Justice.*

Defendant was found guilty by a district court jury of criminal sexual conduct in the first degree and aggravated robbery, Minn. Stat. §§ 609.342(e)(i) and 609.245 (1982), for

* Retired Justice acting pursuant to Minn.Stat.

raping and robbing a young woman. The sex offense, which is the more serious of the two, is a severity level VIII offense which, when committed by a person with a criminal history score of zero, carries a presumptive sentence of 43 (41–45) months in prison. The trial court sentenced defendant to 43 months in prison. On this appeal from judgment of conviction and from the order denying his motion for a new trial, defendant contends (1) that he was denied a fair trial by the improper admission of identification testimony by the victim of the charged offense and by the victims of two *Spreigl* offenses, (2) that he was prejudiced by evidentiary references to "mug shots," evidence which he contends wrongly suggested to the jury that he had a serious criminal record, and (3) that he was prejudiced by improper cross-examination and improper closing argument by the prosecutor. We affirm.

On the evening of October 29, 1979, a freshman at the University of Minnesota was raped and robbed by a man as she was walking to a grocery store near the campus. The victim looked through many police identification photographs but did not identify anyone. Then, on October 13, 1980, she saw defendant in the cafeteria of the hospital where defendant was a patient. She immediately recognized him as her assailant and with the help of her mother, who worked in the hospital, obtained defendant's name. She then contacted police, who showed her a photographic display containing defendant's picture and other pictures. She again positively identified defendant, as she did at a subsequent confirmatory lineup and at trial.

Other evidence admitted against defendant at his trial for this offense consisted of testimony of two victims of similar sexual assaults in the campus area, one occurring on July 27, 1979, the other on November 16, 1979. One of the victims identified defendant's picture from the photographic display and also positively identified defendant at the confirmatory lineup and at trial. The other picked defendant's picture and that of one other man, who looked like defendant;

2.724, subd. 3 (1982).

she did not attend the lineup but viewed defendant and positively identified him at the time he was formally arraigned. This latter witness also positively identified defendant at trial.

■ 1. (a) Defendant's first contention is that the trial court erred in admitting the identification testimony of the witness who identified him at his arraignment, because his counsel was not notified that this witness would confront him at that time and therefore the identification procedure was conducted in violation of defendant's right to counsel. Defendant did not object to this evidence on this ground until after trial and therefore he must be deemed to have forfeited his right to have the issue considered on appeal. *State v. Armstrong*, 311 Minn. 541, 249 N.W.2d 176 (1976).

■ (b) Defendant's other contention relating to the identification procedures is that the lineup was unfair in that defendant was the only person in the lineup whose picture had been shown to the witnesses. If the witnesses who identified defendant at the lineup had not identified defendant's picture, then the fairness of the lineup would be "open to question" on this ground. *See, State v. Witt*, 310 Minn. 211, 213, 245 N.W.2d 612, 615 (1976). However, since the witnesses had identified defendant's picture, the lineup was merely a confirmatory lineup. *See, State v. Knight*, 295 N.W.2d 592 (Minn.1980); *State v. Cobb*, 279 N.W.2d 832 (Minn.1979). Further, our consideration of all the relevant facts satisfies us that none of the identification procedures used created a "very substantial likelihood of irreparable misidentification" in this case. *See, Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).

■ 2. Defendant's second contention is that he was prejudiced by testimonial uses of the phrase "mug shots" and by the fact that he was identified from a display of photographs, which included a picture of him obtained from the St. Paul Bureau of Records.

This is an issue which we have confronted numerous times, most recently in *State v.*

*McAdoo*, 330 N.W.2d 104 (Minn.1982), which cites a number of the other cases. As we stated there, the main reason for generally excluding police identification photographs is that the jury might improperly infer from them that the defendant has a serious record of prior criminal conduct. The trial court, in deciding whether or not to admit such photographs, must balance the probative value of the evidence against the potential of the evidence for unfair prejudice. Minn.R. Evid. 403.

Here the trial court was fully justified in admitting the photographs. Defendant did object, justifiably so, to the use of the phrase "mug shots," and the trial court required the witness in question to stop using the phrase. Defense counsel could have minimized the risk of any negative inference that defendant had a serious criminal record by eliciting evidence that the photograph of defendant was one taken in connection with a traffic offense. However, the jury may well have concluded on its own that the picture of defendant was taken in connection with a prior traffic arrest about which defendant was questioned. In any event, we are satisfied that no prejudicial error was committed.

■ 3. Defendant's final contention is that the prosecutor committed prejudicial misconduct in cross-examining him and in closing argument. The general rule is that if defense counsel fails to object to allegedly improper conduct by the prosecutor, the defendant is deemed to have forfeited his right to have the issue considered on appeal. *State v. Kline*, 306 N.W.2d 132 (Minn.1981). Nothing in our examination of the record convinces us that this rule should not be followed in his case.

Affirmed.

YETKA, J., took no part in the consideration or decision of this case.